# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____ X
                                           :

ROBERT HUNTER BIDEN,          :   Case No.: 1:24-cv-07814-JHR

                      *Plaintiff*,     :

                                         :

      v.                            :

                                         :

FOX NEWS NETWORK, LLC; FOX      :
CORPORATION; VIET D. DINH; JASON  :
KLARMAN; and JOHN and JANE      :
DOES 1-100,                      :

                                       :

                   *Defendants*.   :

                                       :

_____ X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
## FOR REMAND AND FOR HIS ATTORNEYS' FEES AND COSTS

Dated: November 15, 2024                Respectfully submitted,

                                    _____*/s/ Tina Glandian*_____
                                    Tina Glandian, Esq.
                                    GERAGOS & GERAGOS, APC
                                    256 5th Avenue
                                    New York, New York 10001
                                    (213) 625-3900
                                    geragos@geragos.com

                                    *Attorneys for Plaintiff*
                                    *Robert Hunter Biden*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………..iii

PRELIMINARY STATEMENT…………………………………………………………………1

LEGAL STANDARD…………………………………………………………………………..4

ARGUMENT…………………………………………………………………...…………5

I.    The Court Lacks Diversity Jurisdiction Over this Action………………………..…….5

    A.    The removal was procedurally defective…………………………………………5

    B.    Complete diversity does not exist between the parties……………………………8

    C.    Defendant Viet Dinh was not fraudulently joined…………………...…………8

II.   The Court Lacks Federal Jurisdiction Over this Action…………………………………12

    A.    The Complaint does not affirmatively allege a federal claim……………………12

    B.    Plaintiff's claims do not "arise under" the Copyright Act…………………………14

    C.    Plaintiff's claims are not preempted by the Copyright Act………………………16

III.  Plaintiff Is Entitled to Recover His Attorneys' Fees and Costs Associated with the Improper Removal…………………………………………………………………………19

CONCLUSION…………………………………………………………………………..21

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Advani Enters., Inc. v. Underwriters at Lloyds*,
    140 F.3d 157 (2d Cir. 1998)……………………………………………………………8

*Alveranga v. Winston*,
    2007 WL 595069 (E.D.N.Y. Feb. 22, 2007)……………………………………………...21

*Aronson v. Dog Eat Dog Films, Inc.*,
    738 F. Supp. 2d 1104 (W.D. Wash. 2010)……………………………………………..17

*Bassett v. Mashantucket Pequot Tribe*,
    204 F.3d 343 (2d Cir. 2000)……………………………………………………..14-16

*Beneficial Nat. Bank v. Anderson*,
    539 U.S. 1 (2003)……………………………………………………………...12

*Breitweiser v. Chesapeake Energy Corp.*,
    2015 WL 6322625 (N.D. Tex. Oct. 20, 2015)………………………………………….2

*Cablevision Sys. N.Y.C. Corp. v. Okolo*,
    197 F. App'x 61 (2d Cir. 2006)……………………………………………………..6-7

*Cal. Pub. Emps. Ret. Sys. v. WorldCom. Inc.*,
    368 F.3d 86 (2d Cir. 2004)……………………………………………………………4

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)……………………………………………………………4, 12

*Cheung v. Bristol-Myers Squibb Co.*,
    282 F. Supp. 3d 638 (S.D.N.Y. 2017)……………………………………………...5

*Citigroup, Inc. v. Wachovia Corp.*,
    613 F.Supp.2d 485 (S.D.N.Y. 2009)……………………………………………….20

*Citron v. A.O. Smith Water Products Co.*,
    2014 WL 3728199 (S.D.N.Y. July 23, 2014)…………………………………………19

*City of Rome, N.Y. v. Verizon Commc'ns, Inc.*,
    362 F.3d 168 (2d Cir. 2004)………………………………………………………14

*CMGRP, Inc. v. Agency for the Performing Arts, Inc.*,
    689 Fed.Appx. 40 (S.D.N.Y. 2017)…………………………………………………20

*Cohen v. Versatile Studios, Inc.*,
    2014 WL 1584055 (S.D.N.Y. Apr. 21, 2014)……………………………………………15

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992)………………………………………………………16

*De Curtis v. Ferrandina*,
    529 F. App'x 85 (2d Cir. 2013)……………………………………………………6

*DNJ Logistic Group, Inc. v. DHL Express (USA), Inc.*,
    727 F. Supp. 2d 160 (E.D.N.Y. 2010)…………………………………………9

*Eckhart v. Fox News Network, LLC*,
    2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022)……………………………………11

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
    422 F.Supp.2d 357 (S.D.N.Y.2006)…………………………………………4

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019)……………………………………………………………13

*Harraz v. EgyptAir Airlines Co.*,
    2019 WL 6700946 (S.D.N.Y. Dec. 9, 2019)…………………………………4

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020)…………………………………………………17

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007)………………………………………………4

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)…………………………………………………………19

*Logan v. World Luxury Cars, Inc.*,
    2022 WL 2466834 (E.D.N.Y. Mar. 30, 2022)……………………………………7

*Louisville & Nashville R. Co. v. Mottley*,
    211 U.S. 149 (1908)……………………………………………………………12

*Lupo v. Human Affairs Int'l, Inc.*,
    28 F.3d 269 (2d Cir. 1994)…………………………………………………4

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)…………………………………………………………19

*Mayer v. Josiah Wedgwood & Sons, Ltd.*,
    601 F. Supp. 1523 (S.D.N.Y. 1985)…………………………………………………………..16

*MBIA Ins. Corp. v. Royal Bank of Ca.*,
    706 F.Supp.2d 380 (S.D.N.Y. 2009)…………………………………………………………...9

*Miller v. Collectron Corp.*,
    1999 WL 730981 (E.D.N.Y. Sept. 16, 1999)………………………………………………….7

*New Era Publications Int'l, ApS v. Henry Holt & Co.*,
    695 F. Supp. 1493 (S.D.N.Y. 1988)…………………………………………………………..19

*New Jersey Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4*,
    581 F. Supp. 2d 581 (S.D.N.Y. 2008)…………………………………………………………4

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,
    301 F.3d 54 (2d Cir. 2002)…………………………………………………………………...6

*Pampillonia v. RJR Nabisco, Inc.*,
    138 F.3d 459 (2d Cir. 1998)…………………………………………………………………9

*Rodriguez v. 60 Graham, LLC*,
    173 A.D.3d 1095 (2d Dep't 2019)…………………………………………………………...7

*Santos v. Kimmel*,
    2024 WL 3862149 (S.D.N.Y. Aug. 19, 2024)………………………………………………...17

*Stewart v. Raymond Corp.*,
    587 F.Supp.2d 572 (E.D.N.Y. 2008)…………………………………………………………...9

*T.B. Harms Co. v. Eliscu*,
    339 F.2d 823 (2d Cir. 1964)……………………………………………………………14-15

*Vega v. Trinity Realty Corp.*,
    2021 WL 738693 (S.D.N.Y. Feb. 24, 2021)…………………………………………………7

## <u>State Cases</u>

*Deutsche Bank Nat. Tr. Co. v Quinones*,
    114 A.D.3d 719 (2d Dep't 2014)……………………………………………………………6

*HSBC Bank USA, Nat'l Ass'n v. Rahmanan*,
    194 A.D.3d 792 (2d Dep't 2021)……………………………………………………………7

*Lange v. Fox Run Homeowners Ass'n, Inc.*,
    127 A.D.3d 823 (2d Dep't 2015)……………………………………………………………7

*New York City Econ. Dev. Corp. v. T.C. Foods Imp. & Exp. Co.*,
    11 Misc. 3d 1087(A) (Sup. Ct. 2006)……………………………………………………15

*NYCTL 2013-A Tr. v. Heights Houses Corp.*,
    172 A.D.3d 1078 (2d Dep't 2019)……………………………………………………………7

*P.F. v. Brown*,
    84 Misc. 3d 1204(A) (N.Y. Sup. Ct. 2024)…………………………………………………11

## **Federal Statutes**

17 U.S.C. § 106…………………………………………………………………………………16

17 U.S.C. § 301(a)………………………………………………………………………………16

17 U.S.C. § 502…………………………………………………………………………………16

17 U.S.C. § 503…………………………………………………………………………………16

17 U.S.C. § 504…………………………………………………...………………………………16

28 U.S.C. § 1331…………………………………………………………………..………………13

28 U.S.C. § 1332(a)……………………………………………………………………………….8

28 U.S.C. § 1338……………………………………………………………………………...13-15

28 U.S.C. § 1441(b)………………………………………………………………………...5, 7, 12

28 U.S.C. § 1447(c)………………………………………………………………………*passim*

## **State Statutes**

Business Corporation Law § 306(b)(1)…………………………………………………………6

NYC Admin. Code § 10-180(b)(1)……………………………………………………………10

N.Y. Civ. Rights Law § 52-b……………………………………………………………….*passim*

## **Miscellaneous**

H.R. REP. No. 94–1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748…………………17

Rebecca Tushnet, *Raising Walls Against Overlapping Rights: Preemption and the Right of Publicity*, 92 NOTRE DAME L. REV. 1539, 1548 (2017)…………………………………………18

The plaintiff, Robert Hunter Biden, by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion for remand and for his attorneys' fees and costs, pursuant to 28 U.S.C. § 1447(c).

## PRELIMINARY STATEMENT

The claims in this action arise from the unlawful publication and dissemination of intimate images of the President of the United States' son without his consent, depicting him in the nude as well as engaged in sex acts (hereafter the "Intimate Images"), in a fictionalized six-part entertainment series produced by Defendants Fox News Network, LLC (hereafter "Fox News") and Fox Corporation (hereafter collectively with Fox News, the "Fox Defendants") entitled "The Trial of Hunter Biden", in order to humiliate, harass, annoy, and alarm Mr. Biden and to tarnish his reputation. *See* Dkt. 11-1, ¶¶ 2-3, 6-9. "The Trial of Hunter Biden" was widely advertised and it was available for streaming to a vast audience of millions on Fox Nation (the Fox Defendants' entertainment subscription video on-demand service), as well as other streaming platforms including DirecTV, Apple TV, Roku Channel, and YouTube TV, beginning on or about October 21, 2022 until its removal on or about April 30, 2024. *See id.*, ¶¶ 10-13.

Plaintiff initiated this action by filing a Verified Complaint in the New York State Supreme Court in New York County, on October 15, 2024 against the Fox Defendants, Viet Dinh, Jason Klarman, and John and Jane Does 1-100.[1]  *See* Dkt. 11-1.  The Fox Defendants were served with process within hours of the filing.  *See* <u>Declaration of Tina Glandian</u> (hereafter "<u>Glandian Decl.</u>"), ¶¶ 4, 7; Exhibit 1; Exhibit 3 at p. 2.

---

[1] A similar complaint was filed by Plaintiff against the Fox Defendants on June 30, 2024 in the New York State Supreme Court.  *See* Dkt. 11-2.  On July 1, 2024, the Fox Defendants removed that action to federal court based solely on the basis of diversity jurisdiction.  *See* Dkt. 11-3. On July 21, 2024, Plaintiff voluntarily discontinued that action.  *See* Dkt. 11-4.

That same day, Defendants removed this action to this Court based solely on diversity jurisdiction.  *See* Dkt. 1.  In their notice of removal, the Fox Defendants incorrectly represented that they had not yet been served with process and that there is complete diversity between the parties.  *See id.*, ¶¶ 5-6.  Despite being residents of New York state, the Fox Defendants sought to use a controversial procedural tactic known as "snap removal" which, as some federal courts have aptly noted, is a loophole which circumvents the forum defendant rule's prohibition against removal by forum defendants.  *See, e.g., Breitweiser v. Chesapeake Energy Corp.*, 2015 WL 6322625 at *2-3 (N.D. Tex. Oct. 20, 2015).

However, as was quickly revealed, Defendants' snap removal of this action was deficient and improper, as Plaintiff *had* effectuated service on one of the forum defendants, Fox News Network, LLC, prior to Defendants' filing their notice of removal.  As demonstrated by an Affidavit of Service dated October 17, 2024 (and confirmed in an Affirmation of Service prepared for this Court), process server Andrew Cervelli served Fox News Network, LLC via the Secretary of State at 9:56 a.m. on October 15, 2024.  *See* <u>Glandian Decl.</u>, ¶¶ 4, 7; Exhibit 1; Exhibit 3 at p. 2.  Based on this *prima facie* showing of proper service, Plaintiff's counsel asked if the Fox Defendants would withdraw their notice of removal to avoid the unnecessary time and expense of litigating the removal issue.  *See* <u>Glandian Decl.</u>, ¶ 7.  Defense counsel asked Plaintiff's counsel if there was any corroborating evidence of the service on the Secretary of State.  *See id.*, ¶ 8. Plaintiff's counsel promptly provided Defendants' counsel with an email she received on October 15, 2024 at 10:49 a.m., confirming the service on the Secretary of State at 9:56 a.m.  *See id.*, ¶ 9; Exhibit 4 at pp. 6-9.  Plaintiff's counsel also explained that Defendant Viet Dinh (who indisputably destroys complete diversity) was not fraudulently joined.  *See id.*

Rather than agree to withdraw its notice of removal at that time, the Fox Defendants sought to buy time for the next two weeks, requesting additional time to receive the process from the Secretary of State and to consider Plaintiff's request. *See id.*

On November 1, 2024, apparently recognizing that their snap removal was improper and that this Court lacks subject matter jurisdiction based on diversity of jurisdiction, the Fox Defendants filed an amended notice of removal in which they concocted a whole new purported basis for removal, claiming for the first time that this Court has federal jurisdiction over Plaintiff's privacy-based state law claims because they arise under and/or are preempted by the federal Copyright Act. *See* Dkt. 11, ¶ 14. This new argument is not only wrong but it is frivolous, which is why Defendants did not raise it in in their two prior notices of removal filed four months apart. *See* Dkt. 1 & Dkt. 11-3. Indeed, the Complaint makes no reference to Plaintiff's copyright ownership of any of the Intimate Images, it does not allege any copyright infringement by the Fox Defendants, and it does not even use the word "copyright" a single time.[2] *See* Dkt. 11-1.

As explained below, this matter must be remanded back to state court pursuant to 28 U.S.C. § 1447(c) because this Court lacks subject matter jurisdiction over this action. Because Defendants' removal, and amended removal, were objectively unreasonable, and Plaintiff's counsel gave the Fox Defendants repeated opportunities to withdraw their defective and improper notice of removal, which they refused to do (choosing instead to amend their notice of removal), the Court should award Plaintiff his attorneys' fees and costs incurred in connection with the improper removal and his motion for remand, pursuant to 28 U.S.C. § 1447(c).

//

//

---

[2] Needless to say, the Fox Defendants are not the copyright holders of any of the Intimate Images.

## LEGAL STANDARD

The party who removed the action from state court to federal court bears the burden of proving federal jurisdiction.  *See Cal. Pub. Emps. Ret. Sys. v. WorldCom. Inc.*, 368 F.3d 86, 100 (2d Cir. 2004). "There is a strong presumption against removal jurisdiction and any removal statute is to be construed narrowly, 'resolving any doubts against removability.'"  *New Jersey Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4,* 581 F. Supp. 2d 581, 582 (S.D.N.Y. 2008) (quoting *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir. 1994)); *see also Harraz v. EgyptAir Airlines Co.*, 2019 WL 6700946, at *2 (S.D.N.Y. Dec. 9, 2019) ("there is a presumption against removal, and uncertainties tend to weigh in favor of remand").

The federal court must remand the case to state court if it appears at any time that the federal court lacks subject matter jurisdiction over the action.  *See* 28 U.S.C. § 1447(c).  "When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."  *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 391 (S.D.N.Y.2006).  As the Second Circuit has explained, "out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks omitted).

When the removing party invokes diversity jurisdiction, the Court will require "strict conformity with statutory requirements." *Lupo, supra*, 28 F.3d at 274 (internal citation omitted).

When the removing party invokes federal-question jurisdiction, the propriety of removal is governed by the allegations within the removed complaint, not other papers or anticipated defenses. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides

that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). As the U.S. Supreme Court has explained, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Furthermore, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id.* at 393.

## ARGUMENT

## I.    The Court Lacks Diversity Jurisdiction Over this Action.

### A.    The removal was procedurally defective.

An action removable on the basis of diversity jurisdiction may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b)(2). This restriction on removal when there are in-state defendants is known as the forum defendant rule. *See Cheung v. Bristol-Myers Squibb Co.*, 282 F. Supp. 3d 638, 642 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).

The Fox Defendants concede that they are both citizens of New York, where they are headquartered. *See* Dkt. 11, ¶ 15. However, in reliance on the Second Circuit's decision in *Gibbons v. Bristol Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019), the Fox Defendants argue that "at the time of removal, neither Fox Corporation nor Fox News was aware of having been properly joined and served. Fox Corporation was not properly served before removal, and Fox News has not yet received proof of timely and appropriate service." Dkt. 11, ¶ 36.

The Fox Defendants' assertion that removal based on diversity jurisdiction is proper is contrary to the facts and the law. Indeed, as of October 17, 2024, counsel for the Fox Defendants has been in receipt of an Affidavit of Service demonstrating that Defendant Fox News was served

via the Secretary of State[3] on October 15, 2024 at 9:56 a.m., hours before the Fox Defendants filed their original notice of removal at 1:32 p.m.  *See* <u>Glandian Decl.</u>, ¶ 7.  Pursuant to the Fox Defendants' request, Plaintiff's counsel also provided further corroboration of the time of service in the form of an email counsel received on October 15, 2024 at 10:49 a.m., confirming the service on the Secretary of State at 9:56 a.m.  *See id.*, ¶ 9; Exhibit 4 at pp. 6-9.

It is well-settled that a process server's affidavit of service establishes a *prima facie* case as to the method of service and, therefore, gives rise to a presumption of proper service.  *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,* 301 F.3d 54, 57 (2d Cir. 2002) (noting that under New York Law, "a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, we presume that [defendant] was properly served"); *De Curtis v. Ferrandina*, 529 F. App'x 85, 85-86 (2d Cir. 2013) (summary order) ("[a] process server's sworn statement of service creates a presumption that service has been effectuated"); *Deutsche Bank Nat. Tr. Co. v Quinones*, 114 A.D.3d 719, 719 (2d Dep't 2014) ("A process server's affidavit of service constitutes prima facie evidence of proper service.").

The Fox Defendants have taken the position in their communications with Plaintiff's counsel that they have not yet received the process from the Secretary of State.  *See* <u>Glandian Decl.</u>, ¶ 8; Exhibit 4 at p. 3.  In their amended notice of removal, they likewise claim that "Fox News has not yet received proof of timely and appropriate service."  Dkt. 11, ¶ 36.  The Fox Defendants make this assertion in an unverified pleading, rather than a sworn affidavit.  Moreover, a "general denial of service" is insufficient to rebut the presumption of proper service.  *See Cablevision Sys. N.Y.C. Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (summary order); *see*

---

[3] Service on Defendant Fox News via the Secretary of State was proper under New York state law, namely Business Corporation Law section 306(b)(1).

*also NYCTL 2013-A Tr. v. Heights Houses Corp.*, 172 A.D.3d 1078, 1079 (2d Dep't 2019) ("the defendant's mere denial of receipt, in opposition, [is] insufficient to rebut the presumption of proper service created by service upon the Secretary of State"). Rather, "[a] defendant's affidavit denying service rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing, only where the defendant swears to specific facts to rebut the statements in the process server's affidavits." *Cablevision, supra,* 197 F. App'x at 62. "The sworn denial of receipt of service must be a 'detailed and specific contradiction' of the allegations in the process server's affidavit." *HSBC Bank USA, Nat'l Ass'n v. Rahmanan,* 194 A.D.3d 792, 793 (2d Dep't 2021) (quoting *Rodriguez v. 60 Graham, LLC,* 173 A.D.3d 1095, 1095 (2d Dep't 2019)). The Fox Defendants have failed to swear to any such detailed and specific facts. *See, e.g., Lange v. Fox Run Homeowners Ass'n, Inc.*, 127 A.D.3d 823, 824 (2d Dep't 2015) (finding that the defendant "fail[ed] to swear to specific facts rebutting the statements in the process server's affidavit").

Indeed, the "failure to actually receive the summons and complaint from the Secretary of State does not make service improper." *Logan v. World Luxury Cars, Inc.,* 2022 WL 2466834, at *5 (E.D.N.Y. Mar. 30, 2022), *report and recommendation adopted,* 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023) (citing *Miller v. Collectron Corp.,* 1999 WL 730981, at *7 (E.D.N.Y. Sept. 16, 1999)); *see, e.g., Vega v. Trinity Realty Corp.,* 2021 WL 738693, at *5 (S.D.N.Y. Feb. 24, 2021) ("[s]ervice was complete . . . when [the plaintiff] delivered the complaint and summons to the Secretary of State . . . regardless of whether [the defendant] received actual notice of the lawsuit").

Because Fox News, a New York citizen, was properly joined and served as a defendant prior to the Fox Defendants' removal of this action to federal court, the removal is barred by the forum defendant rule. *See* 28 U.S.C. § 1441(b)(2).

**B.    Complete diversity does not exist between the parties.**

Even if the Fox Defendants' removal of the action was procedurally proper (which it was not), the Court lacks diversity jurisdiction over this action.  In order to invoke a district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), a removing defendant must demonstrate that complete diversity exists between the parties, *i.e.* that no plaintiff is a citizen of the same state as any defendant.  *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).

Here, Defendants do not dispute the fact that both Plaintiff and Defendant Viet Dinh are California residents.  *See* Dkt. 11, ¶¶ 15, 18 ("Mr. Biden is domiciled in California."); *id.*, ¶ 16 ("Mr. Dinh [is] a citizen of California.").  Rather, they seek to evade the required showing of complete diversity by erroneously claiming that Mr. Dinh was fraudulently joined.  *See id.*, ¶¶ 16, 20, 37.  However, as explained below, Mr. Dinh was not fraudulently joined and Plaintiff has viable claims against him, thus defeating the Fox Defendants' accusation of fraudulent joinder and the existence of complete diversity between the parties.

**C.    Defendant Viet Dinh was not fraudulently joined.**

Although diversity jurisdiction may not be evaded by a plaintiff by "merely joining as defendants parties with no real connection with the controversy," *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998), a "defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.*  "[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." *MBIA Ins. Corp. v. Royal Bank of Ca.*, 706 F.Supp.2d 380, 393 (S.D.N.Y. 2009) (quotations and citations removed).  "The issue is not whether the plaintiff is likely to prevail against the non-diverse defendant, but whether the pleading sets

forth any possible claim under state law." *Stewart v. Raymond Corp.*, 587 F.Supp.2d 572, 575 (E.D.N.Y. 2008) (emphasis added). Further, "any possibility of recovery, however slim, weighs against a finding of fraudulent joined and in favor of remand." *DNJ Logistic Group, Inc. v. DHL Express (USA), Inc.*, 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010).

Thus, to establish fraudulent joinder, the Fox Defendants must show by clear and convincing evidence that there is no possibility that the Plaintiff can state a claim against Defendant Viet Dinh in state court for violation of New York Civil Rights Law section 52-b, IIED, and unjust enrichment arising from his involvement in the unlawful publication and dissemination of nonconsensual intimate images of Plaintiff. *See* Dkt. 11-1, ¶¶ 39-60. Furthermore, (a) it is the defendant's burden to prove fraudulent joinder, (b) all factual issues must resolved in favor of the plaintiff, and (c) if there is any possibility, however slim, that the complaint can survive a motion to dismiss in state court, the case must be remanded.

Here, the Fox Defendants do nothing more than state in conclusory fashion that "Mr. Biden has no genuine claims against Mr. Dinh, [] and he was named solely in an attempt to destroy diversity jurisdiction." Dkt. 11, ¶ 10; *see also id.*, ¶ 37. However, they present absolutely no argument, let alone clear and convincing evidence, to support their fraudulent joinder allegation, or to demonstrate that Plaintiff's Complaint could not survive a motion to dismiss against Mr. Dinh in state court.

Contrary to their unsupported assertion, Plaintiff's Complaint contains sufficient allegations at the pleading stage to support their claims against Mr. Dinh under state law. As for the first cause of action, New York Civil Rights Law section 52-b provides a private right of action where a defendant disseminates or publishes private images that show a plaintiff in a nude or semi-

nude state, without the plaintiff's consent.  *See* N.Y. Civ. Rights Law § 52-b(1).[4]  The Verified Complaint alleges that Mr. Dinh was the Chief Legal and Policy Officer of Fox Corporation from 2018 until the end of 2023 (which covers the period in which 'The Trial of Hunter Biden' was produced and first made available for streaming, Dkt. 11-1, ¶ 20, and "[i]n this capacity, Mr. Dinh was responsible for overseeing all legal, compliance, and regulatory matters for Fox." *Id.*, ¶ 31. The Complaint further alleges facts to show that the unlawful dissemination and publication of the Intimate Images was done with Mr. Dinh's knowledge and at his direction.  *Id.*, ¶¶ 20-22, 31-32, 39-48.

Although the Fox Defendants have not advanced this argument, any attempt to claim that Mr. Dinh is immune from liability under section 52-b's narrow exception for a dissemination or publication which was "made for a legitimate public purpose" must fail.  N.Y. Civ. Rights Law § 52-b(3)(d). As detailed in the Verified Complaint, "[t]he unlawful publication and dissemination of the Intimate Images by Defendants was not made for a legitimate public purpose, where the miniseries featuring a mock trial is not accurately reporting on newsworthy events but rather, is a fictionalized trial of a nonexistent case against Mr. Biden, ***produced for entertainment purposes***." Dkt. 11-1, ¶ 9 (emphasis added).  As the Complaint further explains: "Far from reporting on a newsworthy event, Fox sought to commercialize Mr. Biden's personality through a form of treatment distinct from the dissemination of news or information. Indeed, the entire miniseries is fictionalized and based on a nonexistent criminal case." *Id.*, ¶ 3; *see also id.*, ¶ 4 (the "fictional" series "was intended solely as entertainment and not as news"); *id.*, ¶ 7 ("Defendants published

---

[4] Unlike its narrower counterpart, NYC Administrative Code section 10-180, which requires that the nonconsensual publication or dissemination of intimate images be made by a "covered recipient" (an individual who gains possession of, or access to, an intimate image from a depicted individual, including through the recording of the intimate image), New York Civil Rights Law section 52-b is broader, prohibiting the publication or dissemination of intimate images by anyone, not just covered recipients. *Compare* NYC Admin. Code § 10-180(b)(1) *with* N.Y. Civ. Rights Law § 52-b.

and disseminated these Intimate Images to their vast audience of millions as part of an entertainment program . . .").  Furthermore, the fact that the Fox Defendants immediately removed the offensive content after receiving a demand by Plaintiff's attorneys to do so demonstrates that the Fox Defendants recognized that the publication and dissemination of Plaintiff's Intimate Images was contrary to law.  *See id.*, ¶¶ 12-13.

This Court previously denied a motion to dismiss a claim under New York Civil Rights Law section 52-b against an employee of one of the Fox Defendants, namely Defendant Fox News, for facts which are analogous to those here.  In *Eckhart v. Fox News Network, LLC,* 2022 WL 4579121, at *2 (S.D.N.Y. Sept. 29, 2022), a Fox News employee filed intimate photographs of plaintiff on the public docket and then sought immunity under the statute's exception for the "dissemination or publication of an intimate still or video image made during lawful and common practices of law enforcement, legal proceedings or medical treatment."  *Id.*  In denying reconsideration of his motion to dismiss, the Honorable Ronnie Abrams held that "at this stage, Plaintiff has plausibly alleged that the public filing of the intimate photos was not a 'lawful and common' practice of a legal proceeding."  *Id.*  Moreover, even though it was unclear who had made the decision to file the intimate photographs to the public docket, "in light of the principles of agency . . . as well as the relevant standard applicable on a motion to dismiss, this question does not alter the Court's conclusion that Eckhart has plausibly alleged that Henry violated the statute."  *Id.*

Here, like in *Eckhart*, given the relevant standard applicable on a motion to dismiss, such a motion by Mr. Dinh would necessarily fail under state law.  *See, e.g., P.F. v. Brown,* 84 Misc. 3d 1204(A) (N.Y. Sup. Ct. 2024) (denying motion to dismiss claim for violation of New York State Civil Rights Law § 52-b by defendant husband, who claimed he could not be held liable for

actions that he claims were taken by defendant wife, where the amended complaint contained numerous allegations that defendant wife's alleged actions were "undertaken at the direction with and the assistance of [defendant husband] himself" and that the defendants were "working in concert"). Thus, resolving all factual issues in favor of the Plaintiff, the Verified Complaint has sufficiently alleged a claim for violation of New York Civil Rights Law section 52-b against Defendant Dinh. Based on Defendant Dinh's role in unlawfully publishing and disseminating the Intimate Images, the Verified Complaint also sufficiently alleges claims against him for IIED and unjust enrichment. *See* Dkt. 11-1, ¶¶ 49-60.

Because Defendants have failed to meet their heavy burden of proving that Mr. Dinh was fraudulently joined, the Court lacks diversity jurisdiction over this matter.

## II.    The Court Lacks Federal Jurisdiction Over this Action.

### A.    The Complaint does not affirmatively allege a federal claim.

A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. *See* 28 U.S.C. § 1441(b). It is fundamental that federal question jurisdiction is appropriate only where a federal claim appears on the face of the complaint. *See Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 6 (2003) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States.") (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908)); *see also Caterpillar, supra,* 482 U.S. at 392 (1987). Stated differently, "a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat. Bank, supra,* 539 U.S. at 6.

In their two notices of removal filed on July 1, 2024 and October 15, 2024, respectively, the Fox Defendants never invoked 28 U.S.C. §§ 1331 or 1338, or claimed that the Court has federal jurisdiction over this matter based on the Copyright Act. *See* Dkt. 1 & Dkt. 11-3.

It was only when the Fox Defendants, after weeks of correspondence between counsel, realized that their removal based on diversity jurisdiction was improper and deficient that they belatedly concocted this frivolous argument based *not on the state law claims in Plaintiff's Complaint* but rather on statements made in a demand letter sent six months earlier on April 23, 2024. *See* Dkt. 11, ¶¶ 22-32. While the pre-trial demand letter outlined a broad range of potential claims Plaintiff may have against the Fox Defendants, Plaintiff ultimately chose not to pursue all such claims, including claims arising from the Fox Defendants' conspiracy to defame him and paint him in a false light, claims arising from the commercial exploitation of Plaintiff's image, name, and likeness under section 50 and 51 of the New York Civil Rights Law, or claims for copyright infringement for the limited category of selfies taken by Mr. Biden himself. *See* Glandian Decl., ¶ 19. Rather, Plaintiff's Complaint filed on October 15, 2024 (and the earlier complaint filed on June 30, 2024) only alleged three specific state law claims: violation of New York Civil Rights Law section 52-b, intentional infliction of emotional distress (IIED), and unjust enrichment. *See* Dkt. 11-1, ¶¶ 39-60. The instant Complaint (and the earlier version) makes no reference to Plaintiff's copyright ownership of any of the Intimate Images, any copyright infringement by the Fox Defendants, or the Copyright Act; in fact, the word "copyright" does not appear in the Complaint.[5] *See generally* Dkt. 11-1; *see also* Dkt. 11-2. The Fox Defendants'

---

[5] A copyrighted work must be registered with the Copyright Office before the copyright owner may sue for infringement of the work, *see Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,* 586 U.S. 296, 301 (2019), which has not been done by Plaintiff. *See* Glandian Decl., ¶ 20.

attempt to invoke federal court jurisdiction based on statements in the April 23, 2024 pre-trial demand letter are therefore without any merit.

*City of Rome, N.Y. v. Verizon Commc'ns, Inc.*, 362 F.3d 168 (2d Cir. 2004) is instructive. There, the Second Circuit held that a plaintiff's discussion of a federal law in a pre-action letter, which referenced the Telecommunications Act in order to rebut an anticipated defense *and which was attached to the plaintiff's complaint*, did not establish a basis for federal question jurisdiction. *Id.* at 175 n.4. The Second Circuit reasoned that well-settled law provides federal question jurisdiction only when "the well-pleaded complaint asserts a federal claim on its face." *Id.* at 175-76.

The Fox Defendants' attempt to invoke federal jurisdiction based on a pre-trial letter (which was not even attached to the Complaint, as was done in *City of Rome, N.Y., supra,* 362 F.3d at 175 n.4), is contrary to well-settled precedent and must be rejected.

### B.    Plaintiff's claims do not "arise under" the Copyright Act.

While claiming that Plaintiff's claims arise under the Copyright Act, 28 U.S.C. § 1338(a), Dkt. 11, ¶¶ 22, 34, the Fox Defendants fail to cite the Second Circuit's decision in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir. 1964), which first articulated the well-established test for determining whether a case arises under the Copyright Act. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 349-50 (2d Cir. 2000) (reaffirming the applicability of the *T.B. Harms* test in the Second Circuit and noting that the test "has been adopted by all the circuits that have considered the question [of] whether a suit arises under the Copyright Act . . ., if the disputed issues include non-copyright matters.").

In fact, even in cases which specifically refer to the Copyright Act, "[i]t is well-established that not every complaint that refers to the Copyright Act 'arises under' that law for purposes

14

of Section 1338(a)." *Id.* at 347.  Under the *T.B. Harms* test, "a suit 'arises under' the Copyright Act if: (1) 'The Complaint is for a remedy expressly granted by the Act, e.g. a suit for infringement or for the statutory royalties for record reproduction;' or (2) 'The Complaint asserts a claim requiring construction of the Act.'" *Cohen v. Versatile Studios, Inc.,* 2014 WL 1584055, at *2 (S.D.N.Y. Apr. 21, 2014) (quoting *Bassett, supra,* 204 F.3d at 349).

Here, Plaintiff's claims do not meet the *T.B. Harms* test for causes of action that arise under the Copyright Act.  As noted above, the Complaint does not affirmatively allege an infringement claim or assert any claim which requires construction of the Copyright Act.  *See generally* Dkt. 11-1.  And Plaintiff's Prayer for Relief, which seeks compensatory damages, punitive damages, "[a]n order directing Defendants to take down, remove and delete any publication of an Intimate Image of Mr. Biden and to permanently destroy any Intimate Image of Mr. Biden in their possession, custody, or control," "[a] permanent injunction enjoining Defendants from publishing, disseminating, disclosing, posting, or uploading any Intimate Images of Mr. Biden," the disgorgement of profits from "The Trial of Hunter Biden," and Plaintiff's reasonable attorneys' fees and costs, *see id.* [Prayer for Relief (a)-(f)], seeks only the remedies available to Plaintiff under state law.  *See* New York Civil Rights Law § 52-b(2) (permitting the Court to "award injunctive relief, punitive damages, compensatory damages and reasonable court costs and attorney's fees"); *see also New York City Econ. Dev. Corp. v. T.C. Foods Imp. & Exp. Co.,* 11 Misc. 3d 1087(A), *3 (Sup. Ct. 2006), *aff'd,* 46 A.D.3d 778, (2007) (under New York law, "the 'disgorgement of improper profits' [is] a restitutionary remedy that is appropriate [] where there has been a showing of unjust enrichment").

Plaintiff does not seek any remedies which are uniquely provided for in the Copyright Act, such as injunctive relief to restrain infringement of a copyright, impoundment remedies including

a protective order, and/or statutory royalties.  *See Bassett, supra,* 204 F.3d at 348 (citing 17 U.S.C. §§ 502-504).  Thus, Plaintiff's claims do not arise under the Copyright Act.

### C.    Plaintiff's claims are not preempted by the Copyright Act.

Plaintiff's state law claims are also not preempted by the Copyright Act.  Under 17 U.S.C. section 301, the Copyright Act preempts a state law claim only where the state law is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a).  A state law that requires proof of "extra elements" beyond those required to prove copyright infringement is qualitatively different and therefore avoids statutory preemption. *See, e.g., Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir. 1992) ("A state law claim is not preempted if the 'extra element' changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim.'" (citing *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)).

Here, section 52-b incorporates several "extra elements" beyond those necessary to prove copyright infringement, namely that the image in question (1) was taken when such person had a reasonable expectation that the image would remain private, (2) depicts an unclothed or exposed intimate part of a person, or such person engaging in sexual conduct, (3) was disseminated or published, or threatened to be disseminated or published, without the consent of such person, and (4) was done for the purpose of harassing, annoying or alarming such person.  *See* NY Civil Rights Law § 52-b(1).  Thus, section 52-b regulates conduct qualitatively different from the conduct governed by federal copyright law, and the doctrine of preemption does not apply.  *See, e.g., Molina v. Phoenix Sound Inc.,* 297 A.D.2d 595, 598 (1st Dep't 2002) (model's suit against adult nightclub under New York Civil Rights Law, alleging, *inter alia*, misappropriation of her image in club's advertising flyers and on its website was not preempted by the Copyright Act where "the

state statute contains the additional element of use of one's image for advertising or trade purposes without written consent"); *see also Shamsky v. Garan, Inc.,* 167 Misc. 2d 149, 157-58 (Sup. Ct. 1995) (right of publicity claim under New York law was not preempted by the Copyright Act where the state law claim contained an extra element, and the right to prevent the commercial exploitation of one's identity appears qualitatively different from copyright).

Relevant portions of the legislative history of the Copyright Act make clear that Congress did not intend for section 301 to effect a general preemption of state laws relating to matters such as invasion of privacy.    *See, e.g.,* H.R. REP. No. 94–1476, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748 ("The evolving common law rights of 'privacy,' 'publicity,' and trade secrets, and the general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights or a breach of trust or confidentiality, that are different in kind from copyright infringement" because "these causes of action vindicate rights "different *in nature* from the rights comprised in a copyright.").

The Fox Defendants' claim that "Mr. Biden's action is clearly 'aimed at stopping' the display or distribution of 'alleged copyrightable home [photos]' and recovering for the commercial exploitation of those works," Dkt. 11, ¶ 32 (quoting *Aronson v. Dog Eat Dog Films, Inc.,* 738 F. Supp. 2d 1104, 1116 (W.D. Wash. 2010)[6]), is false and absurd.   Plaintiff's action is aimed at

---

[6] In *Aronson v. Dog Eat Films, supra,* 738 F. Supp. 2d 1104, a copyright owner filed an action against a film maker alleging copyright infringement in addition to invasion of privacy and misappropriation of likeness.   Applying Washington and Ninth Circuit law, the court found that Plaintiff's state law claims were preempted by the Copyright Act because "Plaintiff's claims of misappropriation of likeness and invasion of privacy arise solely from the Defendant's use of the home video depicting Plaintiff ***and of which Plaintiff asserts a copyright claim***." *Id.* at 1114 (emphasis added).   In contrast here, Plaintiff has not asserted any copyright claims or even established that he is the copyright holder of any of the Intimate Images.   For the same reason, *Santos v. Kimmel,* 2024 WL 3862149 (S.D.N.Y. Aug. 19, 2024), cited by the Fox Defendants, is inapposite.   There, plaintiff asserted a copyright infringement claim under the Copyright Act in addition to related state law claims.   *Id.* at *1.   The court found Plaintiff's claims for breach of contract and breach of implied contract under New York law were preempted by the Copyright Act because those claims arose from the copyrighted works and were "ultimately 'aimed at stopping' the public display of his copyrighted works without a proper license. *Id.* at *10.

stopping the unlawful publication and dissemination of nonconsensual Intimate Images of him (with no regard to who, if anyone, owns the copyright to such Images) as part of his right to privacy guaranteed by New York state law.

In *In re Jackson,* 972 F.3d 25, 37 (2d Cir. 2020), cited by the Fox Defendants, the Second Circuit recognized that "right of publicity claims that vindicate privacy or reputational interests . . . vindicate substantial state law interests that have little relation to the interests of a copyright holder to exclusive control over works of authorship." *See also id.* (quoting Rebecca Tushnet, *Raising Walls Against Overlapping Rights: Preemption and the Right of Publicity*, 92 NOTRE DAME L. REV. 1539, 1548 (2017) ("a right of publicity that furthers the protection of consumers, reputation, or privacy . . . [should] not be preempted"). In finding that the plaintiff's claim in that case did not seek to vindicate any substantial state interests distinct from those furthered by the copyright law, the Court specifically noted that the use of plaintiff's persona was not "in any way derogatory, or an invasion of Jackson's privacy." *In re Jackson, supra,* 972 F.3d at 39. Thus, the Court concluded that "[t]he substantiality of Jackson's interest in his invocation of Connecticut's right of publicity [wa]s therefore minimal. *Id.*

In direct contrast to *In re Jackson*, Plaintiff's claims in this case seek to vindicate substantial state privacy interests distinct from those furthered by the copyright law. Thus, by the court's own reasoning in that case, Plaintiff's privacy and related claims are not preempted, as this would improperly infringe on a compelling state interest in vindicating the violation of personal privacy rights and dignitary interests which Section 52-b is intended to provide recourse for.[7] *See*

---

[7] In enacting New York Civil Rights Law section 52-b in 2019, the New York state legislature recognized that "[p]osting [nonconsensual intimate] photographs online is damaging to the reputations of the victims. These photographs have extensive negative effects, including destroying future intimate relationships and educational and employment opportunities." *See* New York Bill Jacket, 2019 A.B. 5981, Ch. 109 at p.6, https://digitalcollections.archives.nysed.gov/index.php/Detail/objects/85347.

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 487 (1974) ("[a] most fundamental human right, that of privacy, is threatened when industrial espionage is condoned or is made profitable; the state interest in denying profit to such illegal ventures is unchallengeable"); *New Era Publications Int'l, ApS v. Henry Holt & Co.,* 695 F. Supp. 1493, 1505 (S.D.N.Y. 1988), *aff'd,* 873 F.2d 576 (2d Cir. 1989) ("An individual who seeks to protect the privacy of the content of private letters may do so by bringing suit under the right of privacy. That right has developed with remedies and limitations tailored to the policies applicable to privacy. Commentators and courts have agreed that these rights are not preempted by the exclusive jurisdiction asserted by the Copyright Act.").

### III.    Plaintiff Is Entitled to Recover His Attorneys' Fees and Costs Associated with the Improper Removal.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  This statutory cost-shifting provision serves important legislative policy goals, as "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

"[T]he standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141. Accordingly, "courts may award attorney's fees under § 1447(c) [] where the removing party lacked an objectively reasonable basis for seeking removal." *Id.*  However, "[a]warding costs does not require a finding of bad faith or frivolity." *Citron v. A.O. Smith Water Products Co.*, 2014 WL 3728199 at *3 (S.D.N.Y. July 23, 2014).

Here, the Fox Defendants had no objectively reasonable basis to claim that this Court has diversity jurisdiction over the matter given the undisputed fact that Defendant Dinh is a California

resident, like the Plaintiff (and where they have wholly failed to establish fraudulent joinder by clear and convincing evidence, or even a cogent argument). Furthermore, even if the initial filing of the notice of removal was made in good faith without knowledge that one of the Fox Defendants was served prior to the filing of the notice of removal, as of October 17, 2024, the Fox Defendants have been in possession of an Affidavit of Service demonstrating that Andrew Cervelli served Defendant Fox News via the Secretary of State hours before the Fox Defendants filed their notice of removal in which they represented none of the defendants had yet been served, as well as independent corroborating evidence of such service. *See* Glandian Decl., ¶¶ 7-9. But despite repeated opportunities to withdraw their improper and defective notice of removal, the Fox Defendants refused to do so. Rather, in an effort to double-down on their improper removal, they amended their notice of removal in which they concocted a new argument (which had not been raised in the four months since Plaintiff initially filed this action asserting the same three state law claims, or in the two notices of removal the Fox Defendants filed in which they relied solely on an argument of diversity jurisdiction, *see* Dkt. 1 & Dkt. 11-3) which is not only objectively unreasonable but frivolous. Thus, even if the Fox Defendants' original notice of removal was not objectively unreasonable, the amended notice of removal certainly was.

Because the Fox Defendants' improper and deficient removal of this action has imposed unnecessary costs on the Plaintiff, wasted judicial resources, and delayed resolution of this case, the Court should award Plaintiff his attorneys' fees and costs associated with the improper removal pursuant to 28 U.S.C. § 1447(c). *See, e.g., CMGRP, Inc. v. Agency for the Performing Arts, Inc.*, 689 Fed.Appx. 40, 41-42 (S.D.N.Y. 2017) (awarding costs where removing defendant had no objectively reasonable basis to assert a fraudulent joinder and diversity jurisdiction); *Citigroup, Inc. v. Wachovia Corp.*, 613 F.Supp.2d 485, 497 (S.D.N.Y. 2009) (awarding attorneys' fees after

it was clear that defendant was on notice that plaintiff's complaint raised no federal question, yet, defendant proceeded to remove the action and oppose remand); *Alveranga v. Winston*, 2007 WL 595069, at *3 (E.D.N.Y. Feb. 22, 2007) (awarding plaintiff fees and costs pursuant to § 1447(c) where defendants "created unnecessary litigation expense and caused delay in the progress of plaintiff s claims").

**CONCLUSION**

For the foregoing reasons, Plaintiff Robert Hunter Biden respectfully requests that this Court grant Plaintiff's motion to remand this action to the Supreme Court of the State of New York, County of New York, and to award Plaintiff his attorneys' fees and costs incurred in connection with the improper removal and his motion for remand.

Dated: November 15, 2024                Respectfully submitted,

_____/s/ Tina Glandian_____
Tina Glandian, Esq.
GERAGOS & GERAGOS, APC
256 5th Avenue
New York, New York 10001
(213) 625-3900
geragos@geragos.com

*Attorneys for Plaintiff*
*Robert Hunter Biden*